UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  05/21/26

STRIKE 3 HOLDINGS, LLC,

        Plaintiff,

    -against-

JOHN DOE, *subscriber assigned IP address 97.237.64.182*,

        Defendant.

26-CV-3279 (AT) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Strike 3 Holdings, LLC (Strike 3) brings this action against an individual identified only as "John Doe subscriber assigned IP address 97.237.64.182" (Doe). Strike 3 alleges that Doe "has been recorded infringing" its copyright on "24 movies over an extended period of time[,]" Compl. (Dkt. 1) ¶ 4, using the BitTorrent protocol, and seeks damages for copyright infringement pursuant to 17 U.S.C. § 504. *Id* ¶ 56. By motion dated May 14, 2026 (Dkt. 12), plaintiff seeks an *ex parte* order, pursuant to Fed. R. Civ. P. 26(d)(1), permitting it to serve a subpoena on Verizon Online LLC (Verizon 5G Home), an entity it believes to be Doe's internet service provider (ISP), which would permit it to identify Doe by name and address. Pl. Mot. at 1. For the reasons stated below, plaintiff's motion is granted.

## I.    BACKGROUND

Plaintiff Strike 3 is a Delaware limited liability company and a producer of adult motion pictures, which it distributes on DVDs and through subscription websites. Compl. ¶¶ 3, 13. Plaintiff's films are apparently quite popular: plaintiff alleges that it receives millions of unique visitors each month to the websites that it uses to distribute its films, and that its DVDs are "the number one selling adult DVDs in the United States." *Id.* ¶¶ 3, 13. However, this popularity has resulted in "a major problem with Internet piracy . . . Strike 3's motion pictures are among the most pirated content in the world." *Id.* ¶ 16. Much of the piracy takes place over BitTorrent, which is "a

system designed to quickly distribute large files over the Internet. Instead of downloading a file, such as a movie, from a single source, BitTorrent users are able to connect to the computers of other BitTorrent users in order to simultaneously download and upload pieces of the file from and to other users." *Id*. ¶ 17. Plaintiff alleges that Doe has unlawfully "downloaded, copied, and distributed" 24 of its movies, using BitTorrent, on various dates from October 25, 2025 through March 29, 2026. *Id*. ¶ 47; *id.* Ex. A. Plaintiff further alleges that it owns the registered copyrights for all 24 of those movies. *Id*. ¶¶ 30, 45-46.

In order to police and enforce its copyrights, plaintiff developed two "infringement detection systems": VXN Scan and a Cross Reference Tool. Compl. ¶ 27. The VXN Scan system contains six components that work together to find and document downloads of its copyrighted works on well-known torrent websites. Arco Decl. (Dkt. 13-2) ¶¶ 44-86. First, a Torrent Collector searches torrent websites for files associated with plaintiff's titles. *Id*. ¶¶ 44-47. Second, a Downloader retrieves "the .torrent file and a full copy of the targeted computer file" and stores them on a cloud platform for "human audiovisual verification purposes." *Id*. ¶¶ 44-52; *see also* Stalzer Decl. (Dkt. 13-3) ¶¶ 7, 10-11 (attesting that she could verify whether each digital media file was "identical, strikingly similar, or substantially similar" to one of the copyrighted works identified in Exhibit A to the Complaint). Third, a Proprietary Client connects to other "peers" in the torrent network "which are offering pieces of the infringing computer file for download," and repeatedly collects pieces of the digital media file from them. Arco Decl. ¶¶ 53-60. Fourth, a Packet Capture (PCAP) Recorder captures internet data packets exchanged during a BitTorrent computer transaction, including the specific IP addresses of infringers. *Id*. ¶¶ 61-74. Fifth, PCAP Stamper timestamps the recorded files through a third party to prove they "existed on the date and time listed in the timestamp," and were not altered. *Id*. ¶¶ 72-74. Finally, PCAP Analyzer software

2

reviews the recorded data, verifies that the data pieces match the .torrent related file of a copyrighted work, and organizes that information – including IP addresses and timestamps – into a readable report. *Id*. ¶¶ 78-86. Plaintiff alleges that it used VXN Scan to identify defendant's IP address while defendant "was using the BitTorrent file distribution network." Compl. ¶¶ 33-34.

Plaintiff further alleges that its Cross Reference Tool also "independently recorded" numerous instances of infringement by defendant. Compl. ¶ 44. The Cross Reference Tool gathers information about which internet users are sharing a particular torrent file, then uses the torrent network's "distributed hash table" (DHT) to "obtain the IP Addresses of peers registered to each .torrent file." Arco Decl. ¶¶ 87-88. "Specifically, when a BitTorrent client locates and connects to the DHT network, it registers its own IP address while requesting IP addresses of other peers, which are distributing the same .torrent file." *Id*. ¶ 88. The tool stores information such as IP addresses, dates, and file identifiers in a database to be compared with other evidence. Plaintiff alleges that this tool also "detected and documented that Defendant used the BitTorrent File Distribution Network" to distribute plaintiff's copyrighted movies. Compl. ¶ 43 Plaintiff alleges that VXN and the Cross Reference Tool collectively detected 24 infringements of plaintiff's works. *Id*. ¶ 44.

Finally, for further verification, plaintiff engaged the services of Patrick Paige, an experienced computer forensics consultant, "to individually analyze and retain forensic evidence captured by its infringement detection system." Paige Decl. (Dkt. 13-1) ¶ 12. As relevant to this case, Paige attests that he received a PCAP from Strike 3 containing information relating to one specific transaction, initiated on March 30, 2026, in which IP address 97.237.64.182 (that is, the IP addressed subscribed to by Doe) "uploaded a piece or pieces of a file corresponding to" a specific "Info Hash" used by BitTorrent to identify and locate the other "pieces of the desired

file[.]" Paige Decl. ¶¶ 16-22. In this case the "desired file" was the movie identified as "Work No. 1" on Exhibit A to the Complaint. *Id*. ¶ 26. Thus, according to Paige, the PCAP "is evidence which supports the allegation that IP address 97.237.64.182 engaged in a transaction that included the transmission of a piece or pieces of a file, in response to a request for data relating to" Work No. 1. *Id*. Paige adds that Doe's ISP, Verizon 5G Home, "is the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address 97.237.64.182 during the time of the alleged infringement." *Id*. ¶ 28.

## II. DISCUSSION

Fed. R. Civ. P. 26(d)(1) prohibits parties from seeking "discovery from any source before the parties have conferred as required by Rule 26(f)," unless specifically authorized to do so either by the federal rules, by stipulation, or by court order. Rule 26(d)(1) requires a party seeking early discovery to make "some showing of good cause . . . to justify such an order." Charles Alan Wright & Arthur R. Miller, 8A Fed. Prac. & Proc. § 2046.1 (3d ed.); *see also Digital Sin, Inc. v. Does 1-27*, 2012 WL 2036035, at *3 (S.D.N.Y. June 6, 2012) (courts have "applied a 'flexible standard of reasonableness and good cause' to determine whether expedited discovery is appropriate.") (quoting *Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326–27 (S.D.N.Y.2005)). In the context of alleged copyright infringement by anonymous individuals over the internet, courts in this District regularly assess five factors identified by the Second Circuit in determining whether to grant permission for expedited discovery under Fed. R. Civ. P. 26(d)(1):

> (1) the [plaintiff's] ability to make out a *prima facie* showing of infringement, (2) the specificity of the discovery request, (3) the absence of alternative means to obtaining the information sought in the subpoena, (4) the need for the information sought in order to advance the claim, and (5) the [defendant's] expectation of privacy.

4

*Strike 3 Holdings, LLC v. Doe*, 2018 WL 2229124, at *2 (S.D.N.Y. Apr. 25, 2018) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010)). Here, each of these five factors supports plaintiff.

First, plaintiff has made a *prima facie* showing of copyright infringement. A plaintiff shows a *prima facie* case of copyright infringement by demonstrating that (1) it owns a valid copyright, and (2) defendant has engaged in unauthorized copying. *Strike 3*, 2018 WL 2229124, at *2. Plaintiff asserts, through the Arco, Paige, and Stalzer declarations, that it owns valid copyrights in the adult films at issue, and that defendant has engaged in unauthorized copying of at least one of them. Second, the discovery request is very limited: plaintiff seeks only the "true name and address" of defendant Doe. Pl. Mem. (Dkt. 13) at 2. The third and fourth factors similarly favor plaintiff. Paige, who has extensive experience in computer forensics, attests that Verizon 5G Home "is the only entity that can correlate the IP address to its subscriber and identify Defendant." Paige Decl. ¶ 28. Without knowing the identity of the defendant, there would be no way for plaintiff to pursue this litigation. Finally, as courts in this District have repeatedly held, "ISP subscribers have a minimal expectation of privacy in the sharing of copyrighted material." *Malibu Media LLC v. Doe*, 2019 WL 297607, at *3 (S.D.N.Y. Jan. 23, 2019) (quoting *Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839, at *6 (S.D.N.Y. July 16, 2013)).

The Court will therefore grant Strike 3's application, subject to certain conditions, described below, to protect the subscriber associated with the relevant IP address from harassment or unnecessary embarrassment. The Court notes that "the true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering an internet connection. There is a real risk that

defendants might be falsely identified and forced to defend themselves against unwarranted allegations." *Patrick Collins, Inc. v. Does 1-4*, 2012 WL 2130557, at *1 (S.D.N.Y. June 12, 2012).

It is hereby **ORDERED** that plaintiff may serve Verizon 5G Home with a Rule 45 subpoena to obtain defendant Doe's name and mailing address only. Plaintiff shall not seek defendant's email address by subpoena or otherwise. Plaintiff may not serve a Rule 45 subpoena on any other ISP without further order of the Court.

It is further **ORDERED** that plaintiff may use defendant's name and address for the purpose of this litigation only. Plaintiff shall not disclose, or threaten to disclose, defendant's name, address, or any other identifying information (other than defendant's IP address) that plaintiff may subsequently learn. Defendant, once identified, will be permitted to litigate this case anonymously unless and until this Court orders otherwise, after defendant has had notice of and an opportunity to challenge the proposed disclosure. Therefore, plaintiff shall not publicly file any of defendant's identifying information, beyond his or her IP address, and must file all documents containing Doe's name or other such identifying information under seal.

It is further **ORDERED** that plaintiff shall serve a copy of this Order upon Verizon 5G Home along with the subpoena, and shall file proof of such service on the ECF case docket.

It is further **ORDERED** that within 45 days of the date of service of the Rule 45 subpoena upon it, and at least 30 days before providing any responsive information to plaintiff, Verizon 5G Home shall serve defendant Doe – its subscriber – with a copy of the subpoena and a copy of this Order. Verizon 5G Home may serve defendant using any reasonable means, including written notice sent to his or her last known mailing address, transmitted by first class mail or overnight service.

It is further **ORDERED** that defendant shall have 30 days from the date of service of the Rule 45 subpoena and this Order upon him or her to file any motions contesting the subpoena (including a motion to quash or modify the subpoena). Verizon 5G Home may not turn over defendant's identifying information to plaintiff before the expiration of this 30-day period. Additionally, if defendant or Verizon 5G Home files a motion to quash or modify the subpoenas, Verizon 5G Home may not turn over any responsive information to plaintiff until the issues have been addressed and the Court issues an order.

It is further **ORDERED** that Verizon 5G Home shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash.

It is further **ORDERED** that Verizon 5G Home shall confer with plaintiff and shall not assess any charge in advance of providing the information requested in the subpoena. If Verizon 5G Home receives a subpoena and elects to charge for the cost of production, it shall provide a billing summary and cost report to plaintiff.

The Clerk of Court is respectfully directed to close the motion at Dkt. 12.

Dated: New York, New York
      May 21, 2026                     **SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**